UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

Diane LaFemina,

                       Debtor.
------------------------------------------------------------x

Chapter 7

Case No. 14-43362-nhl

# DECISION ON MOTION FOR RELIEF FROM THE
# AUTOMATIC STAY AND CROSS-MOTION IN OPPOSITION

APPEARANCES:

| | |
|---|---|
| Mark E. Cohen, Esq. | Gregory M. Messer, Esq. |
| 108-18 Queens Boulevard | Law Offices of Gregory Messer, PLLC |
| 4th Floor, Suite 3 | 26 Court Street, Suite 2400 |
| Forest Hills, NY 11375 | Brooklyn, NY 11242 |
| *Attorney for the Debtor* | *Attorney for Camp Bow Wow Franchising, Inc.* |

HONORABLE NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

Before the Court is the motion of Camp Bow Wow Franchising, Inc. ("Franchisor" or "Movant"), seeking relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1)[1] (the "Motion") to conclude the arbitration (the "Arbitration") pending before the American Arbitration Association against Diane LaFemina (the "Debtor") and See More Paws, Inc. ("See More Paws" or the "Franchisee"). Debtor filed a cross-motion in opposition, seeking a declaration that the post-termination obligations and the restrictive covenants of the subject franchise agreement are dischargeable pursuant to 11 U.S.C. § 727(b) (the "Cross-Motion"). For the reasons stated below, and to the extent set forth herein, the Motion is granted and the Cross-Motion is denied except as to the alternative relief regarding the modification of the stay.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. BACKGROUND

Movant is a franchisor of dog day care businesses under the franchise mark Camp Bow Wow.[2] On January 22, 2007, Franchisor entered into a franchise agreement with the Debtor (the "Franchise Agreement"), together with a nondisclosure and noncompetition agreement (the

---

[1] Unless otherwise indicated, all statutory references are to 11 U.S.C. *et seq.* (the "Bankruptcy Code").
[2] Camp Bow Wow Franchising, Inc. is the successor-in-interest by merger to D.O.G. Development, LLC.

"NDA").[3] *See* Mot. for Relief from Stay, ECF No. 13; Cross-Mot., ECF No. 26; App. to Br. in Supp. of Cross-Mot., Franchise Agreement, ECF No. 34-1. On the same date, "in consideration of and as an inducement to the execution of the Franchise Agreement," the Debtor personally guaranteed that See More Paws "shall punctually pay and perform each and every undertaking, agreement and covenant set forth in the Agreement," and further agreed "to be personally bound by, and personally liable for the breach of, each and every provision in the Agreement," including the provisions relating to the restrictive covenants and arbitration (the "Guaranty").[4] App. to Br. in Supp. of Cross-Mot., Guaranty, ECF No. 34-3. On or around December 9, 2013, Franchisor gave Franchisee notice that it was terminating the Franchise Agreement because it had issued more than three default notices in less than twelve months.[5]

On January 24, 2014, in accordance with the arbitration clause included in Section 19 of the Franchise Agreement,[6] Franchisor commenced the Arbitration in Boulder, Colorado against the Debtor and See More Paws seeking, in relevant part, (a) declaratory judgment determining that the Franchise Agreement was validly terminated by notice dated December 9, 2013; and (b) preliminary and permanent injunctions requiring compliance with the Franchise Agreement's post-termination obligations and restrictive covenants. Mot., Ex. A, at 9, ECF No. 13.

---

[3] The NDA is attached as an exhibit to the Franchise Agreement. *See* App. to Br. in Supp. of Cross-Mot., NDA, ECF No. 34-3.

[4] The Guaranty is attached as an exhibit to the Franchise Agreement. *See* App. to Br. in Supp. of Cross-Mot., Guaranty, ECF No. 34-3.

[5] Debtor maintains that the termination noticed issued by Franchisor was improper. Cross-Mot. ¶ 13, ECF No. 26.

[6] Section 19.1 of the Franchise Agreement provides that the resolution of "any controversy or dispute arising out of, or relating to the franchise or this Agreement shall be submitted to final and binding arbitration as the sole and exclusive remedy for any such controversy or dispute . . . [which] arbitration shall be governed exclusively by the Federal Arbitration Act and arbitration shall take place according to the Commercial Arbitration Rules of the American Arbitration Association . . . ." App. to Br. in Supp. of Cross-Mot., Franchise Agreement, ECF No. 34-1. Section 19.2 of the Franchise Agreement provides that the arbitration shall be held in Denver, Colorado. *Id.* Section 20.1 of the Franchise Agreement provides that the agreement "shall be interpreted under the laws of the State of Colorado . . . ." *Id.*

Thereafter, on or about January 30, 2014, the Debtor opened a new dog day care called Woof & Tails, Inc. ("Woof & Tails") in Staten Island, New York. Franchisor contends that Woof & Tails constitutes a "competing business" in violation of the Franchise Agreement's restrictive covenants. Mot. 2, ECF No. 13. Debtor concedes that, notwithstanding the actions taken by Franchisor, she "opened a new business engaged in the same business," noting, however, that Woof & Tails was opened in a new location. Cross-Mot. ¶ 25, ECF No. 26; Br. in Supp. of Cross-Mot. 4, ECF No. 34. See More Paws was located at 4707 Arthur Kill Road, Staten Island, New York. Woof & Tails is located at 4260 Arthur Kill Road, Staten Island, New York. Cross-Mot. ¶¶ 1, 4, ECF No. 26.

In March 2014, Franchisor filed a motion in the Arbitration requesting an injunction prohibiting the Franchisee from operating Woof & Tails and compelling the return of all confidential information. The hearing on the motion, scheduled for May 13, 2014, was cancelled because the parties had reportedly reached a settlement. Movant, however, asserts that the purported settlement was never executed. Reply to Cross-Mot. 2, ECF No. 28. Debtor, on the other hand, claims that the arbitrator refused to authorize or permit the settlement to proceed. Cross-Mot. 3, ECF No. 26. Either way, the settlement was not consummated and the arbitrator rescheduled the hearing for July 1, 2014. The Debtor filed the instant chapter 7 case one day before the rescheduled hearing, which stayed the Arbitration.

Subsequently, Franchisor filed a motion for relief from the automatic stay to continue the Arbitration. Mot., ECF No. 13. The Debtor responded by filing a cross-motion in opposition seeking, *inter alia*, a declaration that the post-termination obligations and restrictive covenants of the Franchise Agreement are dischargeable pursuant to § 727(b),[7] or, in the alternative, granting

---

[7] Although the Bankruptcy Rules provide that a request for declaratory relief should be brought by adversary proceeding, "[b]oth parties consented to the Court's entry of a final judgment on whether an injunction compelling

3

the Motion to the limited extent that the Arbitration may proceed to conclusion, while reserving the enforcement of the arbitrator's decision for this Court.[8] Cross-Mot., ECF No. 26. Franchisor filed a reply in opposition to the Cross-Motion, reasserting its position that the Debtor's post-termination obligations under the subject agreement are nondischargeable in bankruptcy. Reply to Cross-Mot., ECF No. 28.

Initial hearings on the Motion and responses thereto were held and adjourned in order to provide the parties the opportunity to further brief the issues. Br. in Supp. of Cross-Mot., ECF No. 34; Mem. of Law in Supp. of Mot., ECF No. 35. Subsequently, the parties agreed to attempt to resolve the dispute through mediation. However, notwithstanding a lengthy mediation and the extensive efforts of the mediator, the parties could not reach an agreement and the matters were taken under advisement.

### III. DISCUSSION

*Whether the Right to Equitable Relief Constitutes a Claim*

Whether Franchisor may enforce the covenants not to compete postpetition depends on whether its right to equitable relief for breach of such covenants is a dischargeable debt. In turn, the question of dischargeability depends on whether the Movant's rights under the restrictive covenants of the Franchise Agreement constitute a "claim" under § 101(5)(B) of the Bankruptcy Code. If they do, they will be dischargeable in the Debtor's bankruptcy case, subject to the provisions of § 523(a) of the Bankruptcy Code, and Movant will be barred from enforcement thereof.

---

compliance with the noncompetition clauses of the Agreements is subject to the discharge in this contested matter, rather than in an adversary proceeding governed by Article VII of the Federal Rules of Bankruptcy Procedure." Mem. of Law in Supp. of Mot., ECF No. 35.

[8] The parties agreed that, in the event the Court found a basis to grant stay relief, that such relief would be limited to allowing the Arbitration to proceed, provided, however, that enforcement of any resulting judgment take place in this Court. *See* Cross-Mot. ¶ 27, ECF No. 26; Hr'g Tr., 13:5–11, 28:5–12, May 10, 2016, ECF No. 59.

With the exception of certain kinds of debts listed in the Bankruptcy Code, a discharge granted under § 727(a) discharges a debtor from all debts that arose before the filing of the bankruptcy petition. 11 U.S.C. § 727(b). A debt is a "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) *right to an equitable remedy for breach of performance if such breach gives rise to a right to payment*, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (emphasis added).

Determining whether a franchisor's equitable rights constitute a claim often begins with an analysis of the Supreme Court's decision in *Ohio v. Kovacs*, 469 U.S. 274, 275 (1985). There, the issue before the Court was whether an injunctive order to clean up a hazardous waste site was a "claim" subject to discharge under § 727(a) of the Bankruptcy Code. The Supreme Court held that it was, emphasizing, however, that its holding was limited to the specific facts in the case. After the debtor, Kovacs, had failed to comply with the cleanup injunction and prior to the bankruptcy filing, the State of Ohio sought and obtained the appointment of a receiver who took possession of the site to undertake the cleanup. At the time of the bankruptcy filing, the cleanup had not yet been completed and the receiver sought money from the debtor to defray the costs for the balance of the work. Because of the debtor's inability to comply with the injunction after it was removed from the property, coupled with the State's concession that, after the receiver's appointment, the only performance sought from the debtor was the payment of money, the Court determined that the injunction had become a right to payment on the State's part—that is, a

"claim." *Id.* at 283–284 (determining that it could not fault "the Court of Appeals for concluding that the cleanup order had been converted into an obligation to pay money, an obligation that was dischargeable in bankruptcy."). In concluding that the injunctive order constituted a claim, however, the Supreme Court distinguished between the debtor's *affirmative* duty to clean up the site by paying money, and the *negative* duty against bringing any further toxic waste, and expressly limited its holding to the former. *Id.* at 284–285 ("[W]e do not hold that the injunction against bringing further toxic wastes on the premises or against any conduct that will contribute to the pollution of the site or the State's waters is dischargeable in bankruptcy; we here address, as did the Court of Appeals, only the affirmative duty to clean up the site and the duty to pay money to that end.").

Most courts addressing the issue of whether equitable relief for breach of a covenant not to compete is a "claim"—and therefore, dischargeable in bankruptcy—have found that it is not. *See, e.g.*, *Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493, 496 (6th Cir. 2001); *In re Reppond*, 238 B.R. 442, 443 (Bankr. E.D. Ark. 1999); *R.J. Carbone Co. v. Nyren* (*In re Nyren*), 187 B.R. 424, 425 (Bankr. D. Conn. 1995); *In re Hughes*, 166 B.R. 103, 106 (Bankr. S.D. Ohio 1994); *In re Peltz*, 55 B.R. 336, 338 (Bankr. M.D. Fla. 1985).

Some courts have employed the rationale of *Kovacs* to find that an injunctive right is not a claim because compliance does not require the expenditure of money. *See, e.g.*, *In re Annabel*, 263 B.R. 19, 27–28 (Bankr. N.D.N.Y. 2001) (holding that within the context of a chapter 7 case, the discharge injunction will not affect the enforcement of an equitable remedy for a debtor's breach of non-compete covenant "where compliance requires simple abstention from conduct and does not give rise to monetary payment."); *May v. Charles Booher & Assoc.* (*In re May*), 141 B.R. 940,

943 (Bankr. S.D. Ohio 1992); *Carstens Health Indus. v. Cooper* (*In re Cooper*), 47 B.R. 842, 845 (Bankr. W.D. Mo. 1985).

Other courts reaching the same conclusion, that injunctive rights do not constitute a claim, have done so based upon a determination that an injunction was the only adequate remedy, and, as such, a breach would not give rise to a right to payment. *See, e.g.*, *In re Brown*, 237 B.R. 740 (Bankr. C.D. Cal. 1999); *Oseen v. Walker* (*In re Oseen*), 133 B.R. 527 (Bankr. D. Idaho 1991); *In re Cox*, 53 B.R. 829, 832 (Bankr. M.D. Fla. 1985).

There is a paucity of reported bankruptcy decisions that have concluded that a right to injunctive relief for breach of a covenant not to compete is dischargeable. In *In re Kilpatrick*, 160 B.R. 560, 564 (Bankr. E.D. Mich. 1993), the court held that because Michigan law permits a breach of a non-compete covenant to be reduced to monetary damages, it is a claim under § 101(5), even if the same right could also be enforced by way of an equitable remedy. A similar result was reached in *Maids International, Inc. v. Ward* (*In re Ward*), 194 B.R. 703, 712 (Bankr. D. Mass. 1996), wherein the court held that because the plaintiff had the right, pursuant to the subject agreement, to elect *either* injunctive relief for breach of the non-compete covenant or damages for the debtor's future competition, said rights constituted claims within the meaning of § 101(5).

Furthermore, the only appellate courts to have addressed this issue are the Sixth and Seventh Circuit Courts of Appeal,[9] and both declined to find that an injunction for breach of a covenant not to compete constituted a claim, dischargeable in bankruptcy. Applying *Kovacs*, the Seventh Circuit Court of Appeals in *In re Udell*, 18 F.3d 403, 408 (7th Cir. 1994), held that the right to an equitable remedy for breach of a covenant not to compete did not constitute a "claim"

---

[9] Although the Tenth Circuit Court of Appeals in *Dalvit v. United Airlines, Inc.*, 359 F. App'x 904 (10th Cir. 2009), noted the Supreme Court's holding in *Kovacs* that claims for equitable relief are dischargeable if they can be reduced to a monetary obligation, the *Dalvit* court's discussion and analysis was focused on the substance of the underlying issues involving Title VII claims, and did not concern covenants not to compete.

7

within the meaning of the Bankruptcy Code. The *Udell* court further concluded that the availability of a liquidated damages clause in the subject contract, as a remedy in addition to, rather than instead of injunctive relief, did not render the right to equitable relief a claim. *Id.* Agreeing with the *Udell* court, the Sixth Circuit Court of Appeals, in *Kennedy v. Medicap Pharmacies, Inc.*, also concluded that "[t]he right to equitable relief constitutes a claim *only if* it is an alternative to a right to payment or if compliance with the equitable order will itself require the payment of money." *Kennedy*, 267 F.3d at 497 (emphasis added).

The recent case of *Acceleration Products, Inc. v. Arikota, Inc.*, No. 2:14-CV-00252-JP, 2016 WL 958173, at *2 (D. Utah Mar. 14, 2016), not unlike the instant case, involved a debtor's alleged breach of a franchise licensing agreement and the unlawful use of the plaintiff's intellectual property, wherein the plaintiff sought to enforce certain agreed-upon non-compete covenants. Relying on the rationale of *Udell* and *Kennedy*, the *Arikota* court held that the debtor's breach of the covenants did not constitute a claim, and thus was not subject to discharge, because the remedies for such a breach were not readily convertible into a monetary equivalent. *Id.*

Similarly, *In re Hurvitz*, 554 B.R. 35, 36 (Bankr. D. Mass. 2016), involved a chapter 7 debtor who, prior to his bankruptcy filing, entered into a franchise agreement with his former employer that contained various post-termination obligations, including non-competition and non-solicitation covenants. Shortly after the franchise agreement was terminated, the debtor became employed by the franchisor's direct competitor and began soliciting business from the franchisor's customers, in violation of the post-termination obligations of the agreement. The franchisor obtained a temporary restraining order in state court, enjoining the debtor from continuing his employment with the competitor and from soliciting any of franchisor's customers. *Id.* Thereafter, the debtor filed his chapter 7 case, arguing that the subject post-termination restrictive covenants

were claims that were dischargeable in bankruptcy. Agreeing with the courts in *Udell* and *Kennedy*, the *Hurvitz* court held that the franchisor's rights to equitable relief to enforce the non-competition and non-solicitation provisions of the franchise agreement did not constitute claims because neither the franchise agreement itself nor state law provided for damages as an alternative to injunctive relief for breach. *Id.* at 38. In summary, the weight of authority on this issue provides that breach of a covenant not to compete only constitutes a claim where it yields a right to repayment as an alternative to, rather than in addition to, equitable relief.

Courts look to state law to determine the nature of contractual remedies afforded in response to a breach of a covenant not to compete. *See, e.g.*, *Kennedy*, 267 F.3d at 498 (holding that because the franchise agreement is governed by Iowa law, state law determines the nature of remedies arising from the breach of the covenant not to compete) (citing *Butner v. United States*, 440 U.S. 48, 54–55 (1979)); *accord Udell*, 18 F.3d at 408 ("Indiana law determines the nature of Carpetland's contractual remedies, including whether the right to an injunction gives rise to a right to payment.") (citing *Butner*, 440 U.S. at 54–55). As noted, Section 20.1 of the Franchise Agreement provides that the agreement "shall be interpreted under the laws of the State of Colorado." App. to Br. in Supp. of Cross-Mot., Franchise Agreement, ECF No. 34-1. Accordingly, the Court applies Colorado law here. While there is a Colorado statute that, with certain exceptions, generally prohibits covenants not to compete, *see* Colo. Rev. Stat. § 8-2-113(2)(a) (2017), there is no explicit statutory provision in Colorado that provides for monetary damages as an alternative to injunctive relief. Colorado appellate courts have held that "[i]njunctive relief is the most common and generally preferred relief for breach of a covenant not to compete," noting that its principal advantage is that it terminates the prohibited conduct and prevents any future damages. *DBA Enters., Inc. v. Findlay*, 923 P.2d 298, 302 (Colo. App. 1996) (holding that the

covenant not to compete that prevented the seller of the franchise from competing was enforceable under the sale of business exception). Interpreting Colorado law, the court in *Keller Corp. v. Kelley*, 187 P.3d 1133, 1139 (Colo. App. 2008), determined that a post-termination covenant not to compete was an enforceable covenant under the applicable Colorado statute ("[W]hen a franchise terminates, the [franchisor's] goodwill is, 'metaphysically, reconveyed to the franchisor.' A covenant not to compete against the franchisor therefore seeks to protect that goodwill.") (citations omitted). Therefore, under Colorado law, a right to payment is not an alternative to equitable relief for breach of a covenant not to compete.

Here, under the terms of the Franchise Agreement, See More Paws and the Debtor agreed not to compete against Franchisor in the event of termination or expiration of their agreement, and further agreed to immediately return all confidential information, trademarks, trade secrets, and other information and materials associated with the franchise. The covenant not to compete was contained in the Franchise Agreement itself, as well as in the separate NDA. Section 13.2 of the Franchise Agreement provides as follows:

> Upon termination or expiration of the Term or any renewal Terms . . . neither the Franchisee, the Manager or the Franchisee's owners will have any direct or indirect interest (i.e. through a relative) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent, for 2 years, in any Competitive Business in: (1) the Authorized Territory or any other franchisee's authorized territory; (2) within 25 miles of the Authorized Territory; or (3) within 25 miles of any Franchisor or Affiliate owned Business or any other franchisee's authorized territory.

App. to Br. in Supp. of Cross-Mot., Franchise Agreement, ECF No. 34-1. Section 13.7 of the Franchise Agreement states:

> Franchisor must be protected against the potential for unfair competition by Franchisee's use of Franchisor's training, assistance, Confidential Information and Trade Secrets in direct competition

> with Franchisor. Franchisee further acknowledges that Franchisor would not have entered into this Agreement or shared the Confidential Information, Trade Secrets and other information with Franchisee absent Franchisee's agreement to strictly comply with the provisions of this Section 13. The Franchisee acknowledges that as a Franchisee of Franchisor, it will have access to the Franchisor's Trade Secrets and Confidential Information and therefore be in a unique position to use the special knowledge gained as a franchisee. *The Franchisee acknowledges that a breach of the covenants contained in this Section 13 will be deemed to threaten immediate and substantial irreparable injury to the Franchisor.* Accordingly, the Franchisee agrees that the Franchisor will have the right, without prior notice to the Franchisee, to obtain immediate injunctive relief without limiting any other rights or remedies and without posting a bond.

*Id.* (emphasis added). Pursuant to the Guaranty, the Debtor agreed "to be personally bound by, and personally liable for the breach of, each and every provision in the Agreement, including but not limited to the terms of Sections 13 (restrictive covenants) and 19 (arbitration) of the Agreement." App. to Br. in Supp. of Cross-Mot., Guaranty, ECF No. 34-3. In addition, the separate NDA executed by the Debtor also contained a post-termination covenant not to compete as well as an acknowledgement that the Franchisor shall be entitled to seek injunctive relief in the event of breach. App. to Br. in Supp. of Cross-Mot., NDA, ECF No. 34-3. Thus, under the terms of the Franchise Agreement, the parties effectively stipulated to the entry of injunctive relief as the remedy in the event of such breach.

Moreover, nothing contained in the Franchise Agreement contemplates the payment of monetary damages as a substitute for injunctive relief in the event of a breach of the restrictive covenants therein. To the contrary, the terms of the underlying agreement indicate that monetary damages are not an alternative to injunctive relief for breach of the covenants not to compete. Section 16.16 of the Franchise Agreement provides as follows:

> The rights of the parties hereto are *cumulative* and no exercise or enforcement by a party of any right or remedy hereunder shall

11

>       preclude the exercise or enforcement by that party of any other right
>       or remedy herein contained, or to which it is entitled by law.

App. to Br. in Supp. of Cross-Mot., Franchise Agreement, ECF No. 34-1 (emphasis added). Further, Section 16.17 of the Franchise Agreement specifically provides that "[n]othing herein shall prevent Franchisor or Franchisee from seeking injunctive relief to prevent irreparable harm, in addition to all other remedies." *Id.*

Upon review of the restrictive covenants and remedies agreed to by the parties in the Franchise Agreement, as well as under Colorado law, this Court finds that the Movant's right to damages, if any, is cumulative, and not alternative, to its right to injunctive relief for breach of the covenants not to compete. Therefore, under the rationale of *Udell* and of *Kennedy*, which this Court believes were correctly decided, the injunctive relief that the Movant seeks in the Arbitration does not constitute a dischargeable claim within the meaning of § 101(5)(B) of the Bankruptcy Code.

### *Relief from the Automatic Stay*

Section 362(d)(1) of the Bankruptcy Code permits relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."[10] 11 U.S.C. § 362(d)(1). "The burden is on the moving party . . . to make an initial showing of cause [for relief from the stay]. Absent such showing, relief from the effect of a stay will be denied." *Schneiderman v. Bogdanovich* (*In re Bogdanovich*), 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart* (*In re Mazzeo*), 167 F.3d 139, 142 (2d Cir. 1999)).

---

[10] Section 362(d)(1) of the Bankruptcy Code provides:
  (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .
11 U.S.C. § 362(d)(1).

The Second Circuit has observed that "[n]either the statute nor the legislative history defines the term 'for cause.'" *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). The *Sonnax* court identified several factors to be considered in deciding whether cause exists to lift the automatic stay to allow litigation to proceed in another forum[11]:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

*Id.* at 1286 (internal citations omitted).

"Not all of these factors will be relevant in every case," *Mazzeo*, 167 F.3d at 143, "[a]nd the court need not give equal weight to each factor." *In re Taub*, 438 B.R. 39, 45 (Bankr. E.D.N.Y. 2010) (citing *Lamarche v. Miles*, 416 B.R. 53, 58 (E.D.N.Y. 2009)). Rather, as several courts have noted, "[w]hen applying these factors and considering whether to modify the automatic stay, the Court should take into account the particular circumstances of the case, and ascertain what is just

---

[11] The legislative history of section 362(d)(1) emphasizes its applicability to proceedings in another forum: "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere." H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977), U.S. Code & Admin. News 1978, pp. 5787, 5297.

to the claimants, the debtor and the estate." *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994). *See also In re Cole*, 202 B.R. 356, 361 (Bankr. S.D.N.Y. 1996); *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). The decision of whether to grant relief from the automatic stay is ultimately a matter of this Court's discretion. *Sonnax*, 907 F.2d at 1286.

Upon consideration of the record and the particular circumstances of this case, the Court finds that the stay should be modified so that the parties may proceed with the Arbitration. Pursuant to the terms of the Franchise Agreement, the parties here agreed to resolve any disputes relating to the franchise or the agreement through arbitration. *See* App. to Br. in Supp. of Cross-Mot., Franchise Agreement, ECF No. 34-1. Franchisor had already commenced arbitration against the Franchisee prior to the filing of the instant bankruptcy case. The Debtor incorrectly asserts that because See More Paws is no longer operating, that "there is nothing to be resolved by [Franchisor in the Arbitration] as against [it]." Cross-Mot. ¶ 8, ECF No. 26. However, a business is not absolved of its liabilities merely because it has ceased operations. Moreover, the Debtor executed the Guaranty, whereby she assumed full responsibility for See More Paws' performance under the Franchise Agreement and personally agreed to be bound by its terms. Franchisor contends that its claims can be more conveniently and speedily determined in the Arbitration, in which the arbitrator was "called into service for this specific case, [and] has been fully involved in the issues relating to the rights and obligations of these parties since January [2014]." Mot. 3, ECF No. 13. While the Debtor submits that she cannot afford to properly defend herself in the Arbitration, and that she would have to "waste time and resources focusing on that proceeding," the underlying substantive disputes were largely briefed and heard by the arbitrator. Cross-Mot. ¶ 21, ECF No. 26. No evidentiary hearing or trial took place before this Court, and the parties did not expend time and resources conducting discovery and preparing evidence for their cases here.

14

In fact, though it was not ultimately executed, the parties purportedly reached a settlement agreement in the Arbitration to resolve their disputes.

Further, allowing the dispute to be resolved in the forum where it is currently pending will not prejudice the rights of creditors or other parties in interest in this chapter 7 case because the substance of the dispute revolves around the Debtor's right to operate her current business, rather than the distribution of any assets.[12] Mot. 3, ECF No. 13.  The Debtor incorrectly asserts that she has certain rights and powers available to her in this Court as a debtor in possession. Cross-Mot. ¶¶ 9–10, ECF No. 26.  However, because the Debtor is not seeking to reorganize here and she has no substantive role in estate administration, the rights of creditors are not prejudiced by allowing the Arbitration to continue to conclusion. *See, e.g.*, *Annabel*, 263 B.R. at 28 (concluding that in a chapter 7 case, unlike one under chapter 11 or 13, the court need not consider the effect of a non-compete covenant on a debtor's ability to reorganize); *Carbone*, 187 B.R. at 425 (holding that issues such as prejudice to the estate in allowing the enforcement of a non-compete are moot in the context of a chapter 7 case because post-petition earnings are not property of the estate); *Cox*, 53 B.R. at 832.

Finally, Movant argues that it continues to suffer harm as a result of the Debtor's breach of the Franchise Agreement by continuing to operate her competing business.  The Debtor asserts that she would be harmed by stay relief because the financial burden associated with defending the Arbitration in Colorado would impede her fresh start.  While one of the underlying policy goals of bankruptcy is to "relieve the honest debtor from the weight of indebtedness which has become oppressive, and to permit him to have a fresh start in business or commercial life," this goal does

---

[12] On October 9, 2014, the Chapter 7 Trustee filed a motion pursuant to Bankruptcy Rule 9019(a), seeking approval of a stipulation of settlement by and between the Trustee and Debtor, which, *inter alia*, provides for the payment of $7,700 by Debtor in exchange for Trustee's interest in the subject business, which motion was subsequently granted following a hearing.

not serve as a tool to deflect responsibility for a debtor's postpetition actions. *Wetmore v. Markoe*, 196 U.S. 68, 77 (1904) (holding that the debtor's fresh start did not relieve him of his nondischargeable prepetition domestic support obligations). Here, the Debtor's fresh start entails relief from dischargeable debts that were incurred prepetition; it does not relieve her of responsibility for her postpetition operation of a new business if in violation of the covenants not to compete. *See Hurvitz*, 554 B.R. at 40 ("[Debtor] points out that his fresh start . . . will be threatened. But since his undertaking not to compete with [franchisor] will survive his bankruptcy discharge, [debtor] faces this threat regardless. It is not granting stay relief that will harm [debtor], it is his promise not to compete with [franchisor]."). To hold otherwise would be to impermissibly enable the Debtor to use bankruptcy as a sword, rather than as a shield. *In re Hirschhorn*, 156 B.R. 379, 389 (Bankr. E.D.N.Y. 1993) ("[B]ankruptcy is intended to be used as a shield and not as a sword. In contending that the non-compete clause has expired, the Debtor seeks to use the protective shield of the extensions which were intended to aid the Debtor in its reorganization as a sword with which to stab its landlord.") (citations omitted).

For these reasons, and under the circumstances of this case, the Court finds that Movant has demonstrated sufficient cause for this Court to grant limited relief from the stay.

## IV.  CONCLUSION

Accordingly, for the reasons stated herein, and based on the entire record, the Motion is granted to the extent that the parties may proceed with the Arbitration to conclusion and the entry of judgment, with enforcement thereof to take place in this Court.  The Cross-Motion is granted as to the alternative relief sought therein, to the extent that the enforcement of any judgment will be stayed subject to further order of this Court.  A separate order will issue.



Dated: September 30, 2017  
Brooklyn, New York

_____  
Nancy Hershey Lord  
United States Bankruptcy Judge